UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARIA RIVERA, et al.,                                           REPORT AND
                                    Plaintiffs,                 RECOMMENDATION
                    - against -
EMYLUIS MARKETING CORP., et al.,                                15-CV-6455 (FB) (JO)
                                    Defendants.
-------------------------------------------------------X

James Orenstein, Magistrate Judge:

Plaintiffs Maria Rivera ("Rivera"), Estorgio Gonzalez Alonzo ("Alonzo"), and Hermelinda Rivera Clara ("Clara") have accused two defendants – Emyluis Marketing Corp. ("Emyluis") and its principal, Jose Garcia ("Garcia") – of failing to pay them the wages to which they were entitled under federal and state law. *See* Docket Entry ("DE") 1 ("Complaint"); 29 U.S.C. § 201 *et seq.* (the Fair Labor Standards Act, or "FLSA"); New York Labor Law ("NYLL") §§ 190 *et seq.* & 650 *et seq.* The defendants have not responded, and plaintiffs therefore seek a default judgment. DE 11. Upon a referral from the Honorable Frederic Block, United States District Judge, I now make this report and, for the reasons set forth below, respectfully recommend that the court dismiss the plaintiffs' sixth cause of action and, on the remaining claims, enter judgment against the two defendants, jointly and severally, in the total amount of $310,071.10 (consisting of $19,563.80 in total damages for Rivera; $160,981.26 for Alonzo; $129,126.04 for Clara; no prejudgment interest or attorneys' fees; and $400.00 for costs).

I.      Background

Emyluis is a New York corporation with its principal place of business in Corona, New York; Garcia is its principal. Complaint ¶¶ 2, 14, 15, 25-33. Rivera, Alonzo, and Clara were all employed as delivery persons and packers, and also performed miscellaneous duties for their employers. *Id.* ¶¶ 36, 42, 49. Each was employed for a period of more than six years prior to leaving the defendants' employ in September 2014. *See id.* ¶¶ 3-5. Each plaintiff alleged that the defendants

failed to pay them all of the required minimum and overtime wages for the hours they worked. *See id.* ¶¶ 37-39, 43-47, 50-55.

The plaintiffs filed their Complaint on November 13, 2015. They asserted seven causes of action against Emyluis and Garcia: the first and second sought recovery of unpaid overtime wages under the FLSA and NYLL, respectively; the third and fourth sought recovery of unpaid minimum wages under the FLSA and NYLL, respectively; and the remaining claims sought relief pursuant to the NYLL for unpaid spread-of-hours wages, failure to provide annual wage notices, and failure to provide accurate wage statements. Complaint ¶¶ 61-94.[1]

The plaintiffs served the defendants on December 14, 2015. DE 4; DE 6. The defendants never responded, and the Clerk entered their default on March 1, 2016. DE 10. Plaintiffs filed the instant motion for default judgment, together with supporting papers, on March 22, 2016. DE 11 (notice of motion); DE 12 (memorandum of law) ("Memo."). The court referred the motion to me in an order dated March 23, 2016. In another order issued that same day, I directed the plaintiffs to file any further evidence or arguments that they wished me to consider by April 13, 2016, and invited the defendants – notwithstanding their default – to submit a response to any such supplemental submissions by April 20, 2016. The plaintiffs mailed that order to the defendants on March 24, 2016. DE 13. The plaintiffs timely submitted a supplemental declaration by their counsel Roman M. Avshalumov ("Avshalumov"), additional records regarding Emyluis's estimated size and revenues, and affidavits sworn to by each of the plaintiffs. *See* DE 14 ("Avshalumov Decl."); DE 14-4 ("Manta.com Report"); DE 14-6 at 2-5 (Rivera Aff.); DE 14-6 at 6-11 (Alonzo Aff.); DE 14-6 at 12-17 (Clara Aff.).

---

[1] The plaintiffs also sued Marlene Nestares, but after each testified to having no knowledge about that person, they dismissed their claims against her. *See* Complaint ¶¶ 16-24, DE 17 (minute entry); DE 18 (transcript of inquest dated on July 14, 2016) ("Tr."); DE 19 (notice of voluntary dismissal).

I convened a damages inquest on July 14, 2016, at which the defendants did not appear, despite being provided with notice. DE 17. Each plaintiff testified in support of the motion, and each testified to facts materially at odds with portions of their affidavits and other prior submissions. *Id.* I expressed concerns at the hearing about these discrepancies as well as miscalculations evident in their prior submissions, and I offered the plaintiffs a final opportunity to submit revised damages calculations based on their testimony. *Id.*; Tr. at 31-32. The plaintiffs submitted their revised damage calculations on July 20, 2016. DE 21 ("Revised Calculations").

II.    Discussion

    A.    Applicable Law

        1.    Default

Although a court accepts as true all well-pleaded allegations against a defaulting defendant for purposes of determining liability, a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). A defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 & n.17 (2d Cir. 2015) (stating that a district court has "discretion to investigate the basis for a plaintiff's claims before deciding whether to grant default judgment"); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *Gunawan*, 897 F. Supp. 2d at 83; *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010).

A default is not an admission of damages; even where a party has defaulted, it may still contest the amount of damages awarded to the plaintiff. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup*, 973 F.2d at 158). Even

3

in the defendant's absence, the "court cannot simply rely on the plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)); *see also Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Chun Jie Yin v. Kim*, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).

> 2.   Substantive Federal and State Wage Laws

The FLSA applies to "employers," a class that the statute defines broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). To fall within the ambit of the FLSA's minimum wage and overtime protections, an employee must demonstrate either that she was "engaged in commerce or in the production of goods for commerce," or that her employer was "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *see also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257-58 (E.D.N.Y. 2007), *aff'd*, 57 F.3d 93 (2d Cir. 2009).

The FLSA requires employers to pay their employees the statutory minimum wage as well a premium (150 percent of the employee's regular rate of pay) for hours worked above 40 hours per week. 29 U.S.C. §§ 206(a), 207(a). Further, an employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions. *Id.* § 211(c). An employee bringing an action for unpaid compensation under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *S. New Eng. Telecomms.*, 121 F.3d at 66-67 (citing *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388

4

(E.D.N.Y. 2007). If an employer fails to keep the required records, the plaintiff may meet this burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *S. New Eng. Telecomms.*, 121 F.3d at 66-67 (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88). The plaintiff's recollection suffices for such purposes. *Rivera*, 497 F. Supp. 2d at 388 (citing *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)).

The relevant provisions of the NYLL mirror the FLSA in most but not all respects. *Chun Jie Yin*, 2008 WL 906736, at *4. Similar to the FLSA, New York defines an employer as a "person, [or] corporation … employing any" employee. NYLL § 190(3). New York likewise mandates a 50 percent premium for overtime work. 12 N.Y.C.R.R. § 142-2.2. Unlike the FLSA, however, New York law does not require the plaintiff to show a nexus with interstate commerce or any minimum amount of annual sales. *Chun Jie Yin*, 2008 WL 906736, at *4. In addition, the state statute has a longer limitations period: claims under the FLSA must be brought within two years of a violation, unless the violation was willful, in which case the period is extended to three years; claims under the NYLL may be asserted up to six years after the alleged violation. *See* 29 U.S.C. § 255(a); NYLL § 663(3). In addition to providing for minimum and overtime wages, the NYLL also requires employers to pay "spread-of-hours" wages to their employees equivalent to an hour's wage for each work day longer than ten hours; to provide a written wage notice at the time of hiring to employees hired after April 9, 2011; and to provide each employee with accurate wage statements at the time wages are paid. *See* NYLL §§ 195(1)(a) & (3); 12 N.Y.C.R.R. § 142-2.4.

B.   Liability

1.   Applicability of the FLSA

An employee can establish that she is entitled to the protections of the FLSA by plausibly pleading that her employer was "an enterprise engaged in commerce or in the production of goods

for commerce." 29 U.S.C. §§ 206(a), 207(a)(1).[2] To satisfy that requirement, the employee must plead that her employer has two or more employees regularly and recurrently engaged in commerce, or has two or more employees regularly and recurrently "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and that the employer's annual gross volume of sales is $500,000 or more. 29 U.S.C. § 203(s)(1)(A); 29 C.F.R. § 779.238.

Some courts, including this one, have held that where a plaintiff alleges that her employer is an "enterprise" under the FLSA and that its volume of sales exceeds $500,000, the complaint need not explicitly allege that the employer is an enterprise "engaged in interstate commerce." *Shim v. Millennium Grp.*, 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (Block, J.). Such courts reason that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA. Because even local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce[,] the test is met if employees … merely handled supplies or equipment that originated out-of-state." *Id.* (alteration in original) (internal citations omitted) (internal quotation marks omitted) (citing *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y.1998)) (finding it "simply inconceivable" that none of the materials used by the defendant healthcare facility originated out-of-state).

The plaintiffs here allege that Emyluis is an "enterprise engaged in interstate commerce[,]" that it "has had an annual gross volume of sales of not less than $50,000[,]" and that the plaintiffs were engaged as "delivery person[s]" and as "packer[s]." Complaint ¶¶ 34, 36, 42, 49; Manta.com

---

[2] An employee can alternatively establish the FLSA's applicability by pleading that she was individually "engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. §§ 206(a), 207(a)(1). The plaintiffs here allege that they "were engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a)." Complaint ¶¶ 63, 74.

Report ("Current estimates show this company has an annual revenue of $500,000 to $1 million[.]").

I therefore assume that this court, applying the reasoning of past decisions such as *Shim*, would

conclude that the plaintiffs have successfully pleaded the required nexus of their work to interstate

commerce,[3] notwithstanding the Complaint's lack of any explicit pleading on that matter.[4]

### 2. The Defendants' Status as Employers

The applicable federal and state statutes have similar standards to determine whether a party

qualifies as a plaintiff's employer. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189

(S.D.N.Y. 2003); 29 U.S.C. § 203(d) (defining an employer as "any person acting directly or indirectly

in the interest of an employer in relation to an employee"); NYLL § 2(6) (defining an employer as a

"person employing any" employee). I therefore rely on case law interpreting the FLSA in considering

whether each defendant was the plaintiffs' employer for purposes of their wage claims.

Recognizing the FLSA's remedial purpose, courts in this jurisdiction have adopted an

expansive view of the employment relationships to which the wage laws apply. *See Carter v. Dutchess*

*Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). To determine whether the Complaint adequately alleges

that each of the defendants employed the plaintiffs for purposes of their wage claims, the court

should consider the economic reality of their relationship with each defendant, including the extent

---

[3] Some judges in this district have declined to make such assumptions and have instead dismissed as insufficiently pleaded complaints that lack explicit allegations establishing a connection to interstate commerce. *See, e.g.*, *Perez v. Queens Boro Yang Cleaner, Inc.*, 2016 WL 1359218, at *4 (E.D.N.Y. Mar. 17, 2016) (report and recommendation), *adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016). I assume, however, that the court in this case will adhere to the reasoning it has previously employed in *Shim* and other cases.

[4] I do not rely on the declaration by the plaintiffs' counsel that Emyluis was "engaged in packing, sending, and passing out flyers," and that the plaintiffs may therefore be inferred to have "directly contributed to interstate commerce, as they bundled flyers to be mailed and delivered out to various persons" because of the logical assumption that some of the materials they handled originated outside of New York. Avshalumov Decl. ¶¶ 11, 13, 14. Facts supporting a finding of liability must be established by the Complaint to which the defendants failed to respond; they cannot be established by a subsequent submission because such later assertions cannot shed light on the viability of a plaintiff's pleading.

to which each: had the power to hire and fire the plaintiffs; supervised and controlled their work schedule or the conditions of their employment; determined the rate and method of their pay; and maintained employment records. *Id.* at 12 & n.1. No single factor is dispositive, and "any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

The plaintiffs allege that the defendants employed them as "delivery person[s], packer[s], and [for] performing other miscellaneous duties[.]" Complaint ¶¶ 36, 42, 49. There is no question that the corporate defendant, Emyluis, is an "employer" as defined by the statute. *See* 29 U.S.C. § 203(d). As to the individual defendant, Garcia, the plaintiffs allege that he is an owner and/or operator, manager, chairman of the board, and chief executive officer of Emyluis, with power over personnel and payroll decisions as well as power to hire and fire employees, establish and pay their wages, set their work schedule, and maintain their employment records. Complaint ¶¶ 25-33. Such allegations suffice to establish that Garcia qualifies as the plaintiffs' employers for purposes of the wage statutes. As a result, Garcia and Emyluis may be held jointly and severally liable for the claimed statutory violations. *See Drozd v. Vlaval Constr. Inc.*, 2011 WL 9192036, at *6 (E.D.N.Y. Oct. 18, 2011) (report and recommendation), *adopted*, 2012 WL 4815639 (E.D.N.Y. Oct. 10, 2012); *Shim v. Millennium Grp., LLC*, 2010 WL 409949, at *2 (E.D.N.Y. Jan. 27, 2010); *Ansoumana*, 255 F. Supp. 2d at 192-93.

3.  <u>Specific Claims</u>

The plaintiffs adequately allege that the defendants failed to pay them the wages (including minimum, overtime, and spread-of-hours) required under state and federal law, and that the defendants failed to provide them with accurate wage statements. Complaint ¶¶ 37-40, 43-47, 50-56, 58. I therefore conclude that they have adequately pleaded six of the seven claims in their

8

Complaint, alleging violation of federal and state minimum and overtime wage provisions, as well as NYLL claims concerning spread-of-hours wages and wage statement requirements.

With respect to their sixth cause of action, however, in which they accuse the defendants of violating New York law with respect to notice and recordkeeping requirements, the Complaint fails to state a viable claim. The NYLL requires that at the time of hiring, every employer shall provide each of its employees with a notice regarding his or her wages. *See* NYLL § 195(1)(a). But that provision went into effect on April 9, 2011, and only confers a cause of action upon employees hired after that date. *See Gonsalez v. Marin*, 2014 WL 2514704, at *7 (E.D.N.Y. Apr. 25, 2014) (report and recommendation), *adopted*, 2014 WL 2526918 (E.D.N.Y. June 4, 2014); *Guan Ming Lin v. Benihana N.Y. Corp.*, 2012 WL 7620734, at *2, 8 (S.D.N.Y. Oct. 23, 2012) (report and recommendation), *adopted*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013). Because the plaintiffs began working for the defendants before the provision's effective date, they are not entitled to relief on the sixth cause of action, and I respectfully recommend that the court dismiss this cause of action with prejudice. *See* Complaint ¶¶ 35, 41, 48.

C.     Relief

1.     Threshold Issues

a.     The Plaintiffs' Counsel's Omissions and Errors

Before analyzing specific remedies available under applicable law, I pause to note that in certain instances I recommend that the court award relief that the plaintiffs themselves have neglected to request. I do so because the apparent abandonment of some of the Complaint's manifestly viable requests for relief appear to be the result of the negligence of the plaintiffs' counsel.

In the initial submissions supporting their motion for default judgment, plaintiffs Alonzo and Clara sought unpaid minimum and overtime wages as well as spread-of-hours compensation,

9

and they provided calculations of these amounts. *See* Plaintiffs' Affs.; Memo at 6-7. However, in

their Revised Calculations – a submission that was itself necessitated by counsel's errors in the initial

motion papers – those plaintiffs omitted any mention of minimum and spread-of-hours wages, and

instead provided revised calculations only for their unpaid overtime hours. In addition, the plaintiffs'

counsel never – either initially or in their post-inquest submissions – provided calculations of

plaintiff Rivera's unpaid minimum and spread-of-hours wages. Nevertheless, the evidence in the

record suffices to allow the court to perform its own week-by-week calculation of each plaintiff's

unpaid wages, as set forth in the Appendix to this Report and Recommendation. I conclude it is

fairer to award the plaintiffs damages based on the latter calculations rather than penalizing them for

their counsel's lapses; and that the court can and should instead take counsel's negligence into

account in determining an appropriate fee award.

b.   Willfulness and the Limitation Periods

The NYLL has a six-year limitations period. *See* NYLL § 663(3). The FLSA permits a

plaintiff to recover wages within two years after a claim accrues, unless the plaintiff can demonstrate

that the employer violated the act willfully, in which case the limitation period is extended to three

years. *See* 29 U.S.C. § 255(a). A violation of the FLSA is willful if the employer "either knew or

showed reckless disregard for the matter of whether its conduct was prohibited" by the statute.

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Young v. Cooper Cameron Corp.*, 586 F.3d 201,

207 (2d Cir. 2009). The burden is on the plaintiff to show the employer's willfulness. *Cooper Cameron*,

586 F.3d at 207 (citation omitted). Mere negligence is insufficient, *see Richland Shoe*, 486 U.S. at 133,

and "an employer does not willfully violate the FLSA even if it acted 'unreasonably, but not

recklessly, in determining its legal obligation.'" *Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL

1379778, at *10 (S.D.N.Y. Mar. 26, 2010) (citing *Richland Shoe*, 486 U.S. at 135 n.13; *Reich v.

Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995)).

The plaintiffs filed the Complaint on November 13, 2015. DE 1. Accordingly, to the extent they seek damages under the FLSA for the year prior to November 13, 2013, they must establish the defendants' willfulness. The Complaint, standing alone, does not suffice in that regard: it makes only the conclusory allegation that the defendants "willfully failed" to pay them the required wages. Complaint ¶¶ 65, 76, 87. The submissions in support of the instant motion, however, provide additional facts. For example, Emyluis paid the plaintiffs the same amount each day regardless of whether they worked more than ten hours and the same amount each week regardless of whether they worked more than 40 hours. *See* Tr. at 24-25 (Alonzo's testimony that the defendants' violations persisted even after he complained about "money missing"). I therefore conclude that the plaintiffs have established that the defendants' FLSA violations were willful and that as a result, the court should award damages under the FLSA for unpaid wages as of November 13, 2012.

### c.   Hours Worked and Wages Paid

When an employer fails to maintain accurate wage and hour records, or when no such records have been produced as a consequence of the defendants' default, the "plaintiff's recollection and estimates of hours worked are presumed to be correct." *See Apolinar v. Global Deli & Grocery, Inc.*, 2013 WL 5408122, at *6 (E.D.N.Y. Sept. 25, 2013) (citation omitted); *see also Mt. Clemens Pottery Co.*, 328 U.S. at 687-88. Thus, although the plaintiffs have not submitted formal documentation such as pay stubs or bank statements to support their recollections as to hours or compensation, I presume that their allegations are true and I rely on them in the analysis that follows. However, it remains the plaintiffs' burden to prove damages to a "reasonable certainty." *See Alcantara*, 183 F.3d at 155. Accordingly, with regard to hours worked, I rely on the plaintiffs' testimony at the inquest hearing on July 14, 2016 rather than their prior written affidavits.

Rivera testified that most of the time, she worked three days per week, for a total of 34 hours and was paid at total of $275 (12 hours on Wednesdays for daily wages of $125, 10.5 hours on

Thursdays for a daily wage of $70, and 11.5 hours on Fridays for a daily wage of $80). One week a month, however, she also worked on Monday for 12.5 hours and was paid an additional daily wage of $80, resulting in a 46.5-hour week at a total wage of $355. *See* Tr. at 12-14.

Alonzo testified that most of the time, he worked six days per week, for a total of 62.75 hours and was paid at total of $505 (12.5 hours on Mondays for daily wages of $80, 8 hours on Tuesdays for daily wages of $70, 12 hours on Wednesdays for daily wages of $125, 10 hours on Thursdays for a daily wage of $80, 10.25 hours on Fridays for daily wages of $70, and 10 hours on Saturdays for a daily wage of $80). Three times every two months, he also worked on Sunday for 10 hours and was paid an additional daily wage of $70, resulting in a 72.75-hour week at a total wage of $575. Tr. at 20-24.[5]

Clara testified that she worked different schedules during two separate periods of her employment with the defendants. During the first period, which lasted until the end of December 2013, she generally worked six days per week, for a total of 65.75 hours and was paid a total wage of $505 (12.5 hours on Mondays for daily wages of $90, 9.5 hours on Tuesdays for daily wages of $70, 12.5 hours on Wednesdays for daily wages of $125, 10.5 hours on Thursdays for a daily wage of $70, 11.25 hours on Fridays for daily wages of $80, and 9.5 hours on Saturdays for a daily wage of $70). During the second employment period, for six weeks starting at the beginning of August 2014, she generally worked three days per week, for a total of 34.25 hours and was paid a total wage of $275 (12.5 hours on Wednesdays for daily wages of $125, 10.5 hours on Thursdays for a daily wage of $70, and 11.25 hours on Fridays for daily wages of $80). Tr. at 27-28.

I rely on the foregoing testimony about hours and wages in calculating the plaintiffs' damages. To the extent that testimony was uncertain as to details, I have made reasonable

---

[5] In the Revised Calculations, counsel calculates Alonzo to have worked a total of 61.25 or 69.25 hours each week. Counsel's arithmetical errors in that regard produce a significant understatement of the damages to which Alonzo is entitled.

assumptions, such as assuming that a plaintiff worked until 5:30 p.m. where she testified that she worked until 5:00 p.m. or 6:00 p.m. To the extent the plaintiffs' Revised Calculations appear to be based on different assumptions about hours worked, I disregard them.

2.   Minimum and Overtime Wages

At all relevant times, the FLSA required the defendants to pay the plaintiffs a minimum hourly wage of $7.25. *See* 29 U.S.C. § 206(a)(1)(C). Under the NYLL, the minimum hourly wage was $7.25 until December 30, 2013, and then $8.00 thereafter. 12 N.Y.C.R.R. § 141-1.3. Both laws required the defendants to pay the plaintiffs a 50 percent premium for their overtime hours – that is, the hours in excess of 40 that they worked in each work week. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. The plaintiffs are not entitled to recover cumulative damages for unpaid wages under both federal and state law, but they may recover under the statute which provides the greatest amount of damages. *See, e.g., Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010).

The first step in calculating the plaintiffs' damages is to determine their regular hourly wages. Consistent with the FLSA, the plaintiffs calculate their regular hourly wages by dividing the total wage paid for a given week by the number of hours worked in that week. *See* Revised Calculations; *Galicia v. 63-68 Diner Corp.*, 2015 WL 1469279, at *5 n.8 (E.D.N.Y. Mar. 30, 2015). For ease of calculation, I adopt that method as well, notwithstanding the fact that the NYLL provides for a slightly different method that can produce different results in certain circumstances.[6] Comparing that regular hourly rate to the applicable minimum wage allows for a calculation of any unpaid minimum wages for the week. The plaintiffs are entitled to the greater of the amounts owed under federal and state law, rather than cumulative awards under both statutes. *See id.* at *5 (citing cases).

---

[6] The NYLL method divides the total weekly wage by the lesser of 40 hours or the number of hours actually worked. *See id.* (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 146–3.5; 29 C.F.R. § 778.109).

Under the FLSA, the court assumes that the plaintiffs were paid at the regular rate for all hours worked, including overtime hours. As a result, the unpaid overtime premium is calculated by multiplying the number of overtime hours for a given week (total hours worked minus 40) by half of the regular rate. Under the NYLL, which assumes that all wages paid compensated only the first 40 hours of work, the amount of unpaid overtime wages is calculated by multiplying the number of overtime hours by 150 percent of the regular hourly wage (provided that the latter exceeds the state minimum wage, which was the case at all relevant times here). *See id.* at *5 n.8; *Peralta v. M & O Iron Works, Inc.*, 2014 WL 988835, at *9 n.12 (E.D.N.Y. Mar. 12, 2014) (citing *Coulibaly v. Millennium Super Car Wash, Inc.*, 2013 WL 6021668, at *5 (E.D.N.Y. Nov. 13, 2013)). As a practical matter, that difference in calculation method means that the overtime damages award under the NYLL will always exceed the corresponding amount under the FLSA; accordingly, for the sake of simplicity, I summarize the details of the calculation of the NYLL damages only in the Appendix to this report.[7]

Applying the methods described above to the foregoing factual findings about the plaintiffs' hours, I calculate that the defendants paid Rivera hourly wages of $8.09 when she worked three days per week and $7.63 when she worked four days per week; they paid Alonzo hourly wages of $8.05 when he worked six days per week and $7.90 when he worked seven days per week; they paid Clara $7.68 when she worked six days per week and $8.03 when she worked three days per week; and they never paid overtime premiums to any of the plaintiffs. Tr. at 12-14, 15, 20-23, 24, 27-29. On the basis of those regular hourly rates, and as set forth in detail in the Appendix, I further calculate that on the first four causes of action, Rivera is entitled to recover unpaid minimum wages of $134.99 and overtime wages of $4,391.69; Alonzo is entitled to recover unpaid minimum wages of $88.48

---

[7] I provide my own detailed calculations because the plaintiffs' counsel failed to do so, notwithstanding my explicit direction to counsel at the inquest provide such week-by-week damages calculations in the post-hearing submission. Tr. at 31-32. I conclude that the court should not punish the plaintiffs for their counsel's failure to comply with that order, but that the court should instead take counsel's recalcitrance into account in determining an appropriate fee.

and overtime wages of \$84,160.49; and Clara is entitled to recover unpaid minimum wages of \$10.44 and overtime wages of \$66,677.46.

3.   Spread-of-Hours Wages

The NYLL provides that an employee is entitled to one hour of additional pay at the minimum wage for each day the employee works over a period of more than ten hours. 12 N.Y.C.R.R. § 142-2.4. The defendants violated this provision with respect to each plaintiff. As detailed in the Appendix, I calculate that Rivera is entitled to recover a total of \$5,056.75 in unpaid spread-of-hours wages; Alonzo is entitled to recover \$4,626.23 in unpaid spread-of-hours wages; and Clara is entitled to recover \$5,911.63 in unpaid spread-of-hours wages.[8]

4.   Statutory Damages for the Wage Statement Violations

The NYLL provides for statutory damages of \$100 per week for each week after April 9, 2011, in which an employer fails to provide an employee with an accurate wage statement, up to a maximum of \$2,500. *See* NYLL § 198(1-d); *see Gonsalez*, 2014 WL 2514704, at *7-8.[9] The defendants failed to provide the plaintiffs with accurate wage statements throughout their employment,

---

[8] Calculating the amount of spread-of-hours wages is complicated by the fact that all of the plaintiffs' recollections about their work schedules included an estimation about days in which they worked either exactly ten hours (which would entitle them to no spread-of-hours premium) or slightly more. Thus, Rivera testified to working either ten or eleven hours on Thursdays, and Alonzo and Clara each testified to working ten or 10.5 hours on Fridays and Thursdays, respectively. For ease of calculation, I have assumed average work days of over ten hours with respect to unpaid minimum and overtime wages, but doing so with respect to spread-of-hours wages would overstate the amount of such damages the plaintiffs are owed. In calculating spread-of-hours damages as set forth in the Appendix, I accounted for that anomaly by halving the spread-of-damages award for the pertinent days – that is, I assumed that on Thursdays (for Rivera and Clara) or Fridays (for Alonzo) the plaintiffs are entitled to only half an hour of premium wages at the applicable minimum hourly wage under New York law.

[9] NYLL § 198(1-d) was amended on December 29, 2014, to provide for damages of \$250 for each work day that the employer fails to provide an accurate wage statement up to a maximum of \$5,000, effective February 27, 2015. Because none of the plaintiffs worked for the defendants after the amendment's enactment, however, it is inapplicable to this case.

including more than 25 weeks after April 2011. *See* Complaint ¶¶ 92-94. Each plaintiff is therefore entitled to $2,500.00 in statutory damages on the seventh cause of action.

     5.   <u>Liquidated Damages</u>

Both federal and state law provide for an additional award of liquidated damages to a plaintiff who establishes that his employer has failed to pay required wages. An employer who violates the FLSA "shall be liable" for unpaid minimum and overtime wages and in "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[10] The same amount of liquidated damages is available under the NYLL for violations occurring on or after April 9, 2011; for earlier violations, the statute provided for liquidated damages equal to one-quarter of the unpaid wages. *See* NYLL § 198(1-a).

The overlapping remedies under federal and state law require an analysis of whether the court should award cumulative liquidated damages under both statutes or only one such award. Courts in this circuit have disagreed on that issue, both with respect to the period before the amendment of the state statue, when the two laws provided for different levels of relief, and with respect to the period after April 2011, when both statutes provided for liquidated damages equal to 100 percent of the unpaid wages.

With respect to the pre-amendment period, some judges have concluded that the two statutes' liquidated damages provisions "serve different purposes and are therefore not mutually exclusive: the liquidated damages provision under the FLSA is compensatory, rather than punitive, while the comparable state law provision is a penalty designed to deter the willful withholding of wages." *Gunawan*, 897 F. Supp. 2d at 91 (citing cases). That appears to be the "majority view" among

---

[10] A defendant employer can avoid such an award by proving that the violation was the result of a good faith error. *See* 29 U.S.C. § 260; *see S. New Eng. Telecomms. Corp.*, 121 F.3d at 70-71. A defaulting defendant necessarily fails to meet that burden and should therefore be liable for liquidated damages. *See Castellanos v. Deli Casagrande Corp.*, 2013 WL 1207058, at *6 (E.D.N.Y. Mar. 7, 2013) (report and recommendation), *adopted,* 2013 WL 1209311 (E.D.N.Y. Mar. 25, 2013).

district courts in this circuit. *See Eschmann v. White Plains Crane Serv., Inc.*, 2014 WL 1224247, at *8 (E.D.N.Y. Mar. 24, 2014) (citing cases). The court need not take a position on the matter with respect to the pre-amendment period, as the plaintiffs are not entitled to any relief under the FLSA for that period for reasons set forth above.

With respect to the post-amendment period, however, the court must resolve the issue, and I conclude for the reasons set forth below that a cumulative award is not appropriate. Now that New York has amended its statute so that the comparable federal and state laws "provide for essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms." *Gunawan*, 897 F. Supp. 2d at 91 n.11; *see also Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 381 & n.3 (E.D.N.Y. 2013) (rejecting request for cumulative awards of liquidated damages and noting that New York's "amendments have resolved the disagreement among the district courts" on the issue of overlapping remedies), *aff'd*, 568 F. App'x 78 (2d Cir. 2014). To the contrary, now that the remedies are so similar – and now that New York has acted to bring its statute in line with its federal counterpart – it seems more reasonable to conclude that the two statutes adopt the same remedies to achieve the same goals. Moreover, a decision to the contrary would have the effect of granting a prevailing plaintiff treble damages (in addition to other remedies) as a remedy for wage law violations – a windfall that neither the state nor the federal legislature appears explicitly to have intended. I therefore conclude that for the period after April 9, 2011, when the FLSA and NYLL both provided for liquidated damages equal to the amount of unpaid wages, the court should award such relief only under one statute. *Lopez v. Yossi's Heimishe Bakery Inc.*, 2015 WL 1469619, at *11 (E.D.N.Y. Mar. 30, 2015).

For the sake of simplicity, in calculating the liquidated damages in this case, I have used the NYLL provision. That is because the NYLL – which guarantees spread-of-hours wages in addition to minimum and overtime wages – includes unpaid spread-of-hours wages as a predicate for its

award of liquidated damages. *See, e.g., Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, 2014 WL 4954629, at *5-7 (E.D.N.Y. Oct. 2, 2014); *Gonzalez*, 2014 WL 2514704, at *6; *Berrezueta v. Royal Crown Pastry Shop, Inc.*, 2013 WL 6579799, at *5 (E.D.N.Y. Dec. 16, 2013). As the Appendix sets forth, I calculate that the defendants owe liquidated damages on the first five causes of action to Rivera in the total amount of $7,480.36, to Alonzo in the total amount of $69,605.67, and to Clara in the total amount of $54,026.52.

6.   Prejudgment Interest

The plaintiffs seek an award of prejudgment interest on both their state and federal law claims. Under the FLSA, a plaintiff is not entitled to recover both prejudgment interest and liquidated damages. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). However, a plaintiff may obtain prejudgment interest pursuant to the NYLL for any covered period for which the plaintiff did not receive liquidated damages under the FLSA. *Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, 2014 WL 2624759 at *5 (S.D.N.Y. June 10, 2014) (citing *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d. Cir. 1999) ("[L]iquidated damages under the Labor Law and pre-judgment interest serve fundamentally different purposes[.]")).

I have recommended, as noted above, that the court award liquidated damages under the NYLL as opposed to the FLSA; accordingly, the plaintiffs may be entitled to prejudgment interest under the NYLL. However, the plaintiffs have not provided any proposed calculations in support of their claim for prejudgment interest despite having been given several opportunities to do so. *See, e.g.*, Order dated March 23, 2016; Minute Entry dated July 14, 2016. Their lapse in this regard justifies a decision to award no prejudgment interest, *see, e.g.*, *Sanchez v. Viva Nail N.Y. Inc.*, 2014 WL 869914, at *1 (E.D.N.Y. Mar. 4, 2014), and I respectfully recommend that result.

7.    Attorney's Fees

Both federal and state law authorize the court to award the plaintiffs their reasonable attorney's fees. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Courts in this circuit assess fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing cases).[11] A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Reasonable hourly rates are informed in part by the rates "prevailing … in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Ferrara v. All Am. Trucking Servs., Inc.*, 2012 WL 1042936, at *7 (E.D.N.Y. Feb. 17, 2012) (report and recommendation) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)), *adopted*, 2012 WL 1041840 (E.D.N.Y. Mar. 28, 2012). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances. *Scott v. City of N.Y.*, 626 F.3d 130, 133-34 (2d Cir. 2010). For that reason, I respectfully recommend that the court award no fees in this case.

---

[11] I use the term "lodestar" only for ease of reference. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 & n.4 (2d Cir. 2007); *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011).

The plaintiffs' counsel have not provided any documentation in support of their request for fees, despite numerous opportunities to do so. *See* Complaint ¶ 6; Memo. at 6-7; Order dated March 23, 2016; Minute Entry dated July 14, 2016. In the absence of any extraordinary circumstances that might excuse the failure to submit contemporaneous records, that alone suffices to preclude a fee award. *See Scott*, 626 F.3d at 133-34. Moreover, I note that the plaintiffs' attorneys regularly represent plaintiffs with similar claims in this court, and are unquestionably aware that the law requires contemporaneous documentation in support of a claim of attorneys' fees. Indeed, these same attorneys have previously, and repeatedly, been warned about their improper practices in this regard. *See Alvarado v. Five Town Car Wash Inc.*, 2015 WL 5437254, at *3 (E.D.N.Y. July 23, 2015) (report and recommendation) (noting that the same firm that represents the plaintiffs here failed to keep contemporaneous time records as required), *adopted*, 2015 WL 5444930 (E.D.N.Y. Sept. 15, 2015); *Pineda-Herrera v. Da-Ar-Da, Inc.*, 2011 WL 2133825, at *7-8 (E.D.N.Y. May 26, 2011) (substantially reducing same firm's fees "to deter future violations" of record-keeping requirement). I therefore respectfully recommend that the court deny the request for an award of attorneys' fees.[12]

8.    Costs

The plaintiffs are likewise entitled to the reimbursement of properly documented litigation costs but have submitted no proof of any such expenses. *See* Complaint at 11; Memo. at 4; 29 U.S.C. § 216(b); NYLL § 663(1). I note, however, that the docket conclusively establishes the plaintiffs' payment of the $400 filing fee. I therefore respectfully recommend an award of costs in that amount. *See Philip Morris USA, Inc. v. Jackson*, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011).

---

[12] Even if some fee award were appropriate notwithstanding counsel's latest violation of the record-keeping requirement, I would nevertheless recommend a very substantial reduction of any lodestar amount. As noted above, the plaintiffs' attorneys have made several errors and omissions that would severely prejudice their clients if not overlooked and cured by the court. In such circumstances, any fee award would for the most part be a windfall that rewards counsel for the work of others.

III.    <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the court dismiss the plaintiffs' sixth cause of action and, on the remaining claims, enter judgment against the defendants jointly and severally in the total amount of $310,071.10 (consisting of $19,563.80 in total damages for Maria Rivera; $160,981.26 for Estorgio Gonzalez Alonzo; $129,126.04 for Hermelinda Rivera Clara; no prejudgment interest or attorneys' fees; and $400.00 for costs).

IV.    <u>Objections</u>

I respectfully direct the plaintiffs to serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service no later than August 22, 2016. Any objections to this Report and Recommendation must be filed no later than September 6, 2016. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
      August 19, 2016

_____/s/_____
JAMES ORENSTEIN
U.S. Magistrate Judge

21